UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA  )  | |
| )  | |
| v.  ) | CR-04-44-B-W |
| )  | |
| DAREN J. CLARK,  )  | |
| )  | |
| Defendant.  )  | |

## ORDER AFFIRMING THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

The Court overrules the Defendant's objections to the magistrate judge's recommended decision, concluding not only that the magistrate judge properly applied *Missouri v. Seibert*,[1] but also that, once the five *Seibert* factors are expressly analyzed, the Recommended Decision must be affirmed.

**I.   BACKGROUND**

On May 13, 2004, a federal grand jury in the district of Maine issued a one count indictment against Daren J. Clark for possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).  *Indictment* (Docket # 4).  On March 16, 2007, Mr. Clark moved to suppress statements, admissions, and answers he made on January 14, 2004, both before and after he was arrested.  *Def.'s Pretrial Mot. to Suppress Statements, Admissions, and Answers* (Docket # 19).  Magistrate Judge Kravchuk held an evidentiary hearing on May 7, 2007, and on May 10, 2007, she issued a Recommended Decision, recommending that the Court grant the motion as to some, but not all the Defendant's statements.  *Recommended Decision* (Docket # 25).

---

[1] 542 U.S. 600 (2004).

Mr. Clark has objected. *Def.'s Obj. to Report and Recommendation* (Docket # 26) (*Def.'s Obj.*). Conceding that the magistrate judge correctly cited *Seibert* as controlling authority, Mr. Clark argues that her "factual and legal analysis largely fails to follow the direction set forth by the Supreme Court." *Id.* at 3. He recounts the five factors in *Seibert* and urges the Court to conclude that, when analyzed, his statements, including his written statement, should be suppressed.

The magistrate judge's recommended decision describes four conversations between Mr. Clark and law enforcement officers: (1) preliminary statements made by Mr. Clark concerning the location and ownership of the firearms; (2) a "casual chat" at Mr. Clark's kitchen table with Trooper Darren Edwards of the Connecticut State Police; (3) an interview again at Mr. Clark's kitchen table with Warden Philip Dugas of the Maine Warden Service; and, (4) a later interview at the state police barracks with Trooper David Hickey of the Connecticut State Police. Magistrate Judge Kravchuk recommended that that the preliminary statements about the location and ownership of the firearms not be suppressed, that the statements Mr. Clark made during the kitchen table conversations with Trooper Edwards and Warden Dugas be suppressed, and that the barracks statements (including a written statement) that he made during the third interview with Trooper Hickey not be suppressed. Mr. Clark has not objected to the magistrate judge's recommendation regarding the preliminary statements about the location and ownership of the firearms; his sole objection is to the failure to recommend suppression of the barracks statements. *Def.'s Obj.* at 2. The Court overrules his objection and affirms the magistrate judge's recommended decision.

## II.  DISCUSSION

### A.  The Alleged Failure to Articulate

The Court remains unconvinced that the magistrate judge misapplied *Seibert*.  Even though the magistrate judge properly cited *Seibert*, Mr. Clark contends that she failed to follow it, because the Recommended Decision does not expressly analyze every *Seibert* factor.  Just this week, the United States Supreme Court addressed this type of argument in *Rita v. United States*, No. 06-5754, 2007 U.S. LEXIS 8269, at *33 (June 21, 2007):

> The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted," or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Id*.  In describing her analysis, the magistrate judge's recommended decision fits well within an acceptable range of her professional judgment.  In similar cases within this circuit and district, the courts have not articulated and individually applied each *Seibert* criterion.  *See, e.g., United States v. Materas*, 483 F.3d 27, 33 (1st Cir. 2007); *United States v. Mastera*, Crim. No. 04-50-P-S, 2004 U.S. Dist. LEXIS 15538, at *8-9 (D. Me. Aug. 6, 2004); *United States v. Libby*, Crim. No. 04-26-B-W, 2004 U.S. Dist. LEXIS 14581, at * 18-19 (D. Me. July 30, 2004).

### B.  Application of the *Seibert* Factors

Before applying the *Seibert* factors, it bears mentioning that the Court views *Seibert* as markedly distinct from this case.  In *Seibert*, the arresting officer was explicitly instructed by another officer not to Mirandize the defendant.  *Id*. at 604.  Once the defendant arrived at the station house, the other officer conducted a 30-40 minute interrogation without *Miranda* warnings, and he elicited an incriminating admission.  *Id*. at 605.  The officer then gave the

defendant a 20-minute cigarette and coffee break, after which he turned on a tape recorder, obtained a waiver of her *Miranda* rights on the record, and continued to interrogate the defendant, who reiterated her pre-*Miranda* statements. *Id*. The Supreme Court characterized this sequence as "a police strategy adapted to undermine the *Miranda* warnings." *Id*. at 616. Based on the record in this case, *Seibert* is strikingly dissimilar; here, there is simply no evidence of such a "police strategy."[2] *See Materas*, 483 F.3d at 33 (analyzing whether there was "evidence that the police were attempting to undermine the purposes of the *Miranda* rule to gain subsequent Mirandized confessions.").

Further, the Court does not view *Seibert* as establishing a rigid analytic framework that each court, regardless of the underlying facts, must separately analyze. In contrasting the facts in *Seibert* with the facts in *Oregon v. Elstad*, 470 U.S. 298 (1985), the *Seibert* Court discussed what it termed a "series of relevant facts" that "bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object." *Seibert*, 542 U.S. at 615. *Seibert* did not suggest that these five relevant factors are either exclusive or mandatory. Nevertheless, in excess of caution, since the Defendant has objected to the absence of an explicit five-factor analysis, the Court will address each *Seibert* factor.

The first factor is "the completeness and detail of the questions and answers in the first round of interrogation." At issue are two question-and-answer sessions and their relationship, if any, with the third barracks conversation. During the "casual chat," although Officer Edwards and Mr. Clark generally discussed hunting in Maine, there was no mention of the .22 Marlin rifle, which was the subject of the Maine investigation and the pending federal charge. By contrast, Warden Dugas's interrogation was fairly circumscribed, focusing only on illegal hunting activities and the .22 rifle that Mr. Clark allegedly used in Maine. In response to the

---

[2] The essential inapplicability of *Seibert* explains why the magistrate judge did not belabor its five-factor analysis.

warden's questions, Mr. Clark admitted using the rifle during a night hunting trip. Thus, the first chat was neither complete nor detailed; the second interview was at the same time more detailed, but less complete.

Second, as to "the overlapping content of the two statements," Mr. Clark provided Trooper Hickey with a signed statement, which basically chronicles his gun purchases over a span of years. One firearm was the .22 Magnum rifle at issue; Mr. Clark stated that he bought the rifle in Maine from his uncle, that it was meant for his 8-year-old daughter when she is old enough, and that it has been kept in Maine, not Connecticut. The remainder of the statement does not overlap with the statements Mr. Clark made to Warden Dugas or to Trooper Edwards. Thus, while there is some overlap, it is insufficient to conclude that the two conversations comprised a continuous interrogation.

Third, "the timing and setting of the first and second" statements does not support suppression of the Mirandized statement. Mr. Clark made his initial statements at his home, sitting around the kitchen table with Warden Dugas and Trooper Edwards. He made the second, written statement some time later, after Connecticut State Police had arrested him, had taken him to the station house, and had read him his Miranda rights. In the Court's view, a reasonable person in Mr. Clark's position would have recognized the second interrogation as a "new and distinct experience." *Seibert*, 542 U.S. at 616.

As regards "the continuity of police personnel," this fourth factor also does not favor suppression. Although Trooper Hickey was one of the officers in the house during execution of the search warrant, he had limited contact with Mr. Clark, and did not participate in either Trooper Edwards's "casual chat" or Warden Dugas's interrogation. There is little, if any, continuity of police personnel between the interrogations.

5

The fifth and final *Seibert* factor is "the degree to which the interrogator's questions treated the second round as continuous with the first." Here, there is nothing to suggest that Trooper Hickey was treating his interrogation as an extension of the interrogation that took place in Mr. Clark's home. As the magistrate judge pointed out, he was not involved in Warden Dugas's interview, nor did he participate in the "casual chat" at the kitchen table. Moreover, unlike *Seibert*, there is no suggestion that Trooper Hickey referred back to the previous interrogation. Thus, the Court rejects Mr. Clark's attempt to characterize Trooper Hickey's questioning as "continuous;" to the contrary, the absence of continuous questioning reflects one essential difference between this case and *Seibert*.

Expressly applying the five *Seibert* factors to the facts in this case, the Court concurs with the magistrate judge's recommendations.

### III.   CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; it has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the Magistrate Judge for the reasons set forth in her Recommended Decision, and for the additional reasons set forth herein and determines that no further proceeding is necessary.

1. It is therefore ORDERED that the Recommended Decision of the Magistrate Judge is hereby AFFIRMED.

2. It is further ORDERED that the Defendant's Motion to Suppress (Docket # 19) is GRANTED as to the statements made to Trooper Edwards and Warden Dugas at the kitchen table and DENIED as to the preliminary statements regarding location of the guns, the key to the cabinet and the ownership of the guns within the cabinet and as to the written statement provided to Hickey at the detention facility.

    SO ORDERED.

                                                         /s/ John A. Woodcock, Jr.
                                                         JOHN A. WOODCOCK, JR.
                                                         UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2007